# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOROTHY LONG,** | : | **Civil No. 1:14-CV-2192** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)[1]** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner of** | : | |
| **Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.   INTRODUCTION

This is an action brought by Plaintiff, Dorothy Long, an adult individual who resides in the Middle District of Pennsylvania, under 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. In this social security appeal Ms. Long alleges that the Administrative Law Judge (ALJ) erred on three scores by: (1) discounting the opinion of a treating source that Ms. Long had "marked" limitations in work-related decision-making; (2) giving insufficient weight to the opinion of a physician assistant regarding her physical

---

[1]This matter has been assigned to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

limitations; and (3) failing to give sufficient weight to the plaintiff's subjective complaints of disabling pain. (Doc. 12.) Our review of the record, however, reveals that there was substantial record evidence supporting each of these findings and conclusions of the ALJ. Moreover, we find that the rationale for the ALJ's decision was fully and adequately set forth in the decision denying Ms. Long's claim. Therefore, given the deferential standard of review which applies to such claims and cases, for the reasons set forth below, the Commissioner's decision is **AFFIRMED**, and Ms. Long's request for relief is **DENIED**.

## II.   BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, Dorothy Long, was born in on April 10,1976, and was 40 years old at the time of her initial application for disability benefits on August 1, 2006. (Tr. 219, 226.) By the time of her ALJ hearing in this matter on November 21, 2012, Long was approximately 46 years old.[2]  In her application, Long sought disability benefits due to the combined effects of the following physical and emotional impairments: disc disease, lumbago, fibromyalgia, arthritis, insomnia, allergies, iron deficiency, muscle spasms, depression, anxiety, adjustive and post-traumatic stress disorders. (Tr. 11.)

---

[2]We note that there have been protracted administrative proceedings on this application, (Tr. 95 and 149), resulting in part from the plaintiff's failure to attend an initial ALJ hearing scheduled in her case. While these delays account for the prolonged nature of these proceedings, which spanned six years, no party has raised the delay as an issue in this litigation.

With respect to this array of medical and emotional impairments the administrative records contained extensive treatment notes, records, and evaluations by multiple medical sources spanning a number of years. Many of these treatment records suggested that Long, who was working intermittently at a sheltered workshop at the time of the ALJ hearing, (Tr. 45), suffered from only a moderate degree of impairment.

## A.    LONG'S MEDICAL IMPAIRMENTS

For example, between 2004 and 2012, Long received medical care from a half dozen doctors and health care providers. (Tr. 16-19.) The tests, treatment and examinations conducted by these health care professionals consistently documented subjective complaints of pain by Ms. Long, but revealed little objective evidence of physical impairment by the plaintiff.  Consequently, the course of treatment typically prescribe for Ms. Long was conservative in nature, and frequently entailed little more than regular office visits and physical therapy. Ms. Long's medical history further revealed that she was not consistently compliant with this conservative treatment course and often neglected to attend or complete programs of physical therapy which were prescribed or recommended for her. (Id.) Given the lack of clinical findings supporting Ms. Long's claims of physical disability, and her non-compliance with the conservative treatment regime prescribe for her by a number of doctors, in 2009 a

state agency medical consultant opined that Long retained the ability to perform light work. (Tr. 16-17.)

Arrayed against this body of medical evidence was one report cited by Long which indicated that she was physically disabled. This report was a checkbox form completed by a physician assistant in June of 2012. (Tr. 717-719.) In this form, the physician assistant identified in a summary fashion a series of physical limitations on Ms. Long's ability to work, limitations which would have precluded Long from holding substantial employment.

### B.   LONG'S EMOTIONAL TREATMENT HISTORY

With respect to any emotional impairments experienced by Long, her medical history was similarly extensive, but inconclusive. Like her medical history, Long's emotional treatment history was marked by reports and evaluations from numerous medical sources. (Tr. 18-22.) These treating sources provided Long with Global Assessment of Functioning or GAF scores which ranged between 50 and 60 over some three years between 2009 and 2012. These GAF scores were consistent with only a moderate level of emotional or mental impairment. Moreover as a general matter, Long received only routine and conservative treatment consisting of medication and therapy for her adjustment disorder with depressed mood during this period. (Tr. 20, 708, 862, 1595.) The medical records also reflected that Long's

symptoms were largely controlled with medication (Tr. 708, 710, 871, 1519). Indeed, Long reported that her depression was well controlled with medication, including Trazodone, Zoloft, and sertraline. (Tr. 708, 710, 871, 1243, 1262, 1599).

Long also provided positive mental health assessments to her care-givers over time. For example, in March 2011, Long stated that she was not as emotional; was not "freaking out" as much; and that others had noticed a difference in her (Tr. 871); in September 2012, Long denied experiencing any depression, anxiety or psychosis (Tr. 914); and throughout the Fall of 2012, Long reported that she was only experiencing situational stress because she was waiting to hear about her claim for social security benefits and her partner had left her. (Tr. 1595).

In addition, Long's description of her own activities of daily living in many respects did not support her claims of wholly debilitating physical and emotional limitations. According to Long, she cared for a pet; assisted her mother by driving her to appointments and helping her with whatever she needs; and helped her girlfriend with the household chores and her children. (Tr. 278, 419, 422). Long also reported that she went grocery shopping and cooked (Tr. 279, 367, 422); socialized with her family (Tr. 282); walked her dog (Tr. 421);  spent time with others listening to music, playing cards, and talking (Tr. 424); and attended church on a regular basis. (Tr. 424).

It was against the backdrop of this mental health treatment history that three

medical sources opined at various times that Long's emotional impairments were not disabling.   Thus, in 2006, a state agency psychologist, Richard A. Heil, Ph.D., reviewed Long's record and found that Plaintiff's mental impairments were not severe (Tr. 611-623). In reaching this conclusion, Dr. Heil  noted that Long had at that time only sought treatment from her primary care physician for her depression and reported that medication he prescribed (Trazadone) helped her symptoms (Tr. 623); and had not at that time asserted that she was functionally limited as a result of her depression. (Tr. 623.).

Three years later, in January of 2009, a second consultative examiner, Dana R. Irwin, Ph.D., found that Long had only minimal limitations as a result of her mental health (Tr. 19, 655).  On mental status examination, Long's demeanor was reported as pragmatic, "somewhat abrupt," and "free of undue anxiety" (Tr. 656); she was alert, oriented, and possessed adequate recall; her speech was comprehensible and logical without bizarre thought content or process; her mood was euthymic with humor; and she endorsed depressive symptomatology at a negligible intensity. (Tr. 656). Long indicated she was only slightly irritable due to her family relational problems and she denied guilt or self-concept declines, homicidal or suicidal ideations, anhedonia or social declines and symptoms related to manic, hypomanic, or cyclothymic mood. (Tr. 656). Long also demonstrated intact immediate and remote recall; demonstrated

average performance on various measures of her knowledge (Tr. 656); and displayed moderate self-awareness and psychological insight. (Tr. 657). Given these findings Dr. Irwin diagnosed Long with family relational problems and assessed her GAF score at 60. (Tr. 657). Dr. Irwin also concluded that Long's activities of daily living were intact; her social functions were active and varied with peers and family; her concentration and persistence were not impaired; and she was capable of negotiating a variety of novel settings and acquaintances (Tr. 657).

Likewise, on January 16, 2009, state agency psychologist, Kerry Brace, Psy.D., concluded that Long's mental impairments were not severe (Tr. 19, 662-74). Dr. Brace opined that Long had no restrictions in her activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence, or pace, and had not experienced repeated episodes of decompensation of extended duration (Tr. 672).

In contrast to these medical opinions and findings, on June 14, 2012, one of Long's care-givers, Dr. Komarneni completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on behalf of Long. (Tr. 720-22). Dr. Komarneni found that Long had moderate limitations in her ability to understand, remember, and carry out short, simple instructions. (Tr. 720). He opined that Long had marked limitation in her ability to understand, remember, and carry out detailed

instructions; and in her ability to make judgments on simple work-related decisions. (Tr. 720). Dr. Komarneni further concluded that Long's abilities to respond appropriately to supervision, co-workers, and work pressures in a work setting were not affected at all by her impairment. (Tr. 721-22.)

## C.   THE ALJ'S DECISION

It is against this medical background, a medical history marked by contradictory evidence much of which suggested that Long retained the ability to work,  that the ALJ conducted a hearing in Long's case on November 21, 2012. (Tr. 39-70.) At this hearing Long and a Vocational Expert appeared and testified. (Id.)

On January 30, 2013, the ALJ issued an opinion denying Long's application for benefits. (Tr. 9-26.) In this decision denying Ms. Long's claims, the ALJ found that Ms. Long met the insured status requirement of Title II of the Social Security Act through September of 2009.  (Tr. 11).  At step one, the ALJ found that Ms. Long did not engage in substantial gainful activity at any point during the relevant period after August 1, 2006.  Id.  At step two, the ALJ found that, through her date last insured, Ms. Long had medically determinable severe impairments, including: disc disease, lumbago, fibromyalgia, arthritis, insomnia, allergies, iron deficiency, muscle spasms, depression, anxiety, adjustive and post-traumatic stress disorders. (Tr. 11.) At step three the ALJ concluded that during the relevant period Ms. Long did not have an

8

impairment or combination of impairments that met or medically equaled the severity

of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr.

12).

Between steps three and four of the sequential evaluation process, the ALJ

assessed Ms. Long's residual functional capacity, or RFC, finding that:

> The claimant has the residual functional capacity to perform sedentary
> work as defined in 20 CFR 404.1567(a) and 416.967(a), except the
> claimant is limited to occasional balancing, stooping, kneeling,
> crouching, crawling, and climbing ramps and stairs. The claimant must
> avoid climbing ladders, ropes, and scaffolds, exposure to weather,
> extreme heat or cold, wetness, humidity, vibration, chemicals, or
> atmospheric conditions such as smoke, fumes, odors, dusts, poor
> ventilation, and gases. The claimant can occasionally reach overhead and
> the need to change positions can be accommodated by the normal
> morning, lunch, and afternoon breaks. The claimant is limited to simple,
> routine, and repetitive tasks and simple work related decisions with
> infrequent changes in the work setting defined as no more than 1 per day.
> The claimant must avoid fast-paced production requirements as seen in
> assembly line work and she can tolerate only occasional interaction with
> co-workers, supervisors, and the general public.

(Tr. 14-15.)

In reaching this determination, the ALJ carefully considered all of the medical

and psychological evidence amassed in the case, and specifically addressed the

opinion of Dr. Komarneni, one of Long's health care-givers. On this score, the ALJ

accorded significant weight to many of Dr. Komarneni's assessments, but concluded

that the doctor's opinion that Long had "marked limitations in making judgments on

simple, work related decisions" warranted "only minimal weight, as it is not accompanied by any clinical or objective findings, it is inconsistent with Dr. Komarneni's consistent Global Assessment of Functioning of 55 in September, October, and November, 2012, and [was] inconsistent with the majority of the [other] evidence." (Tr. 22.)

Likewise, the ALJ's assessment of Long's physical limitations rested upon a comprehensive analysis of records and opinions from numerous treating and consulting sources, and included a specific, detailed analysis of the 2012 checkbox form completed by a physician assistant which found that Long was physically disabled. The ALJ rejected this summary opinion as an outlier which was inconsistent with the treatment records and opinions of eight other doctors. (Tr. 21.) The ALJ also observed that this opinion was not borne out by objective medical testing, and clinical findings. (Id.) Further, the ALJ noted that a physician assistant is not an acceptable medical source under social security regulations whose opinion is entitled to great weight. Taking all of these factors into account, the ALJ largely discounted this opinion. (Id.)

The ALJ then concluded at Step 4 that Ms. Long could no longer do her prior work, (Tr. 22), but found consistent with the testimony of the Vocational Expert at step five that Ms. Long could adjust to other work that exists in significant numbers

in the national economy despite her impairments. (Tr. 23.)

Having exhausting her administrative remedies with respect to this adverse decision, Long filed the instant appeal. (Doc. 1.) This matter is fully briefed by the parties, and is now ripe for resolution.

### III.   DISCUSSION

#### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a Social Security claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200(3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Ms. Long is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### B.   INITIAL BURDENS OF PROOF, PERSUASION AND ARTICULATION FOR THE ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must also show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant

is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC.  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work.  42 U.S.C. §423(d)(5); 20 C.F.R. §404.1512; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

14

The ALJ's disability determination must also meet certain basic procedural and substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C. GUIDELINES FOR THE ASSESSMENT OF THE CREDIBILITY OF A CLAIMANT'S ALLEGATIONS ABOUT HER SYMPTOMS AND LIMITATIONS

Furthermore, with respect to assessments of a claimant's credibility, the regulations describe a two-step process. 20 C.F.R. §404.1529. First, the ALJ must consider whether the claimant has met his or her burden of showing that he or she has a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms alleged. Once an underlying impairment has been

shown, the ALJ reaches the second step of this process.  At the second step the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  SSR 96-7p, 1996 WL 374186 at *2.  "Whenever the individual's statements abut the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on the consideration of the entire case record."  <u>Id.</u>  In doing so, the ALJ must consider the following seven factors outlined in 20 C.F.R. §404.1529(c)(3):  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms that are brought to the ALJ's attention.   20 C.F.R. 404.1529(c)(3); SSR 96-7p, 1996 WL 374186 at*3.

In making a finding about the credibility of a claimant's statements, the ALJ need not totally accept or totally reject the individual's statements. SSR 96-7p, 1996 WL 374186. The ALJ may find all, some, or none of the claimant's allegations to be credible, or may find a claimant's statements about the extent of his or her functional limitations to be credible but not to the degree alleged. Id. Further, an ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility. Frazier v. Apfel, No. 99-CV-715, 2000 WL 288246, at *9(E.D. Pa. Mar. 7, 2000)(quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531(6th Cir. 1997)).

### D.   LEGAL BENCHMARKS FOR THE ALJ'S ASSESSMENT OF MEDICAL OPINION EVIDENCE

Finally an ALJ's assessment of medical opinion evidence must also satisfy certain legal benchmarks. The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions. 20

C.F.R. §404.1527(a)(2).[3]  Regardless of its source, the ALJ is required to evaluate

every medical opinion received.  20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions, the ALJ is

guided by factors outlined in 20 C.F.R. §404.1527(c).  "The regulations provide

progressively more rigorous tests for weighing opinions as the ties between the source

of the opinion and the individual become weaker."  SSR 96-6p, 1996 WL 374180 at

*2.  Treating sources have the closest ties to the claimant, and therefore their opinions

generally entitled to more weight.  See 20 C.F.R. §404.1527(c)(2)("Generally, we give

more weight to opinions from your treating sources...");  20 C.F.R. §404.1502

(defining treating source).  Under some circumstances, the medical opinion of a

treating source may even be entitled to controlling weight.   20 C.F.R.

§§04.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling

---

[3]Medical source opinions on issues that are dispositive of a case, e.g., whether a claimant is disabled, are reserved to the Commissioner and do not constitute medical opinions defined by 20 C.F.R. §404.1527(a)(2).   20 C.F.R. §404.1527(d). Furthermore, where a medical source opines that an individual is limited to "sedentary" work, or makes similar statements that appear to use terms set out in the Commissioner's regulations, the adjudicator must not assume that the medical source using the terms "sedentary" and "light" is aware of the Commissioner's definitions. SSR 96-5p, 1996 WL 374183 at *5.  Such opinions must never be ignored, and must be considered based on the applicable factors in 20 C.F.R. §404.1527(c).  SSR 96-5p, 1996 WL 374183 at *3.  However, medical opinions on case dispositive issues like these are never entitled to controlling weight under 20 C.F.R. §404.1527(c)(2).  See 20 C.F.R. §404.1527(d)(3); SSR 96-5p, 1996 WL 374183 at *2.

weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §404.1527(c).

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators.  See SSR 96-5p, 1996 WL 374183 at *4.  As such, they do not express opinions; they make findings of fact that become part of the determination.  Id.  However, 20 C.F.R. §404.1527(e) provides that at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants should be evaluated as medical opinion evidence.  As such, ALJs must consider these opinions

as expert opinion evidence by nonexamining physicians and psychologists and must address these opinions in their decisions.   SSR 96-5p, 1996 WL 374183 at *6. Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record."   SSR 96-6p, 1996 WL 374180 at *2.   In appropriate circumstances, opinions from nonexamining State agency  medical or psychological consultants may be entitled to greater weight than the opinions of treating or examining sources.  Id. at *3.

Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. See 20 C.F.R. §404.1527(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").   "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(quoting Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

However, it is also well-settled that acceptable medical sources do not include physician assistants. Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir.2008). Rather,

these medical source rules only applies to physicians, and where a disability claimant's application is supported by statements from physician assistants, this rule does not apply. Instead, the ALJ should consider the physician assistant's opinion as some "other source" opinion, which should be assessed, but not given controlling weight. Applying these legal guideposts, it has been held that an ALJ may properly elect to follow the consultative opinion of a non-examining physician who reviews a claimant's medical records over treating physician assistant opinions, provided the ALJ adequately explains the grounds for this determination. See e.g., Weaver v. Astrue, 353 F. App'x 151, 152 (10th Cir.2009); Hearn v. Colvin, No. 3:13-CV-1229, 2014 WL 4793954, at *10 11 (M.D. Pa. Sept. 24, 2014); Wade v. Colvin, No. 13–CV–135, 2014 WL 1015719 (D.Co.2014).

## E.   SUBSTANTIAL EVIDENCE SUPPORTED THE ALJ'S FINDINGS

In this appeal, Long challenges the ALJ's decision on three scores, arguing that the ALJ erred in: (1) discounting the opinion of a treating source that Ms. Long had "marked" limitations in work-related decision-making; (2) giving insufficient weight to the opinion of a physician assistant; and (3) failing to give sufficient weight to the plaintiff's subjective complaints of disabling pain.

Judged against the deferential standards of review which governs these claims, we find that each of these assertions fails to undermine the ALJ's judgment in this

case. Turning first to Long's complaint that the ALJ gave insufficient weight to Dr. Komarneni's finding that she suffered from a marked limitation in the field of work-related decision-making, we note at the outset that the ALJ actually gave significant weight to much of Dr. Komarneni's opinion, but rejected this specific aspect of the opinion, noting that it was inconsistent with multiple other findings by various other medical sources, and was not congruent with the doctor's own Global Assessment of Functioning (GAF) score for Long. That GAF score of 55 was consistent with only a moderate, and not a marked, level of impairment.

In her argument, Long suggests that the ALJ erred in considering *any* GAF score when discounting Dr. Komarneni's opinion, observing that medical science has recently abandoned the GAF score as a diagnostic tool.  We find this argument unpersuasive. While recent developments in medical science may shed some light on the weight to be given to GAF scores, the relevant Social Security regulations mandate, and case law confirms, that an ALJ is required  to consider all relevant evidence in the case record to assess a claimant's RFC.  20 C.F.R. §404.1545(a)(1). Further, because during the relevant period the GAF scale was used by mental health professionals to assess current treatment needs and provide a prognosis, it was clearly relevant to Long's claim.  Thus, Long's assertion that – due to its highly subjective nature – a GAF score should not influence an ALJ's decision misconstrues the

regulations. Notwithstanding the fact that, subsequent to the ALJ's decision, the GAF score was abandoned as an assessment tool by mental health clinicians, these scores were properly viewed by the ALJ as pieces of evidence in an otherwise substantial record. Accordingly, we find that the ALJ properly addressed the GAF scores of record, concluded that the GAF scores of record were consistent with the overall objective medical evidence; and found that these GAF scores and other medical evidence only supported a finding of moderate mental impairment.

In this regard, we note that GAF scores like those frequently found here "in the 51–60 range indicate [only] moderate impairment in social or occupational functioning." Cherry v. Barnhart, 29 F. App'x 898, 900 (3d Cir.2002). Thus, these objective measures actually contradict a finding of total disability and support a conclusion that Long faced no more than moderate impairment. See Smith v. Comm'r of Soc. Sec., CIV.A. 10–468 MLC, 2010 WL 4063347 (D.N.J. Oct.15, 2010). Indeed, the United States Court of Appeals for the Third Circuit has expressly endorsed this type of fact-finding by ALJs in the past, affirming the denial of benefits in cases in which claimants presented similar overall GAF scores. See, e.g., Rios v. Comm'r of Soc. Sec., 444 F. Appx. 532 (3d Cir.2011) (affirming Commissioner where the record indicated that the plaintiff was assessed three GAF scores at different times of 50, 50, and 50–55 respectively); Gilroy v. Astrue, 351 F. App'x 714 (3d Cir.2009) (affirming

ALJ decision denying disability benefits despite GAF of 45); Glover v. Astrue, CIV.A. 10–901, 2011 WL 1562267 (E.D.Pa. Mar.31, 2011) report and recommendation adopted, CIV.A. 10–901, 2011 WL 1597692 (E.D. Pa. Apr. 26, 2011(lowest identified GAF rating was 48). DaVinci v. Astrue, No. 1:11 CV 1470, 2012 WL 6137324, at *10 (M.D. Pa. Sept. 21, 2012) report and recommendation adopted, No. 1:11 CV 1470, 2012 WL 6136846 (M.D. Pa. Dec. 11, 2012)(GAF score of 60-65).

In short, there was no error in the ALJ's treatment of this psychological opinion evidence, and the ALJ's findings on this score were supported by substantial evidence that was thoroughly discussed in the ALJ's decision. Therefore, this argument provides no grounds for setting aside the ALJ's decision.

Likewise, the ALJ properly assessed the opinion of the physician assistant and discounted that opinion. At the outset, we note that the ALJ correctly concluded that this isolated opinion was inconsistent with greater weight of the medical and opinion evidence in this case, evidence which revealed a lesser degree of impairment than that found by the physician assistant. Further, the format of this report, a check box form, added little weight to this opinion. Indeed, it is well-settled that: "Form reports in which a physician [assistant's] obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993).

24

Finally, the ALJ aptly found that  the physician assistant's opinion, as some "other source" opinion,  should be assessed, but not given controlling weight. Indeed, this decision was entirely consistent with the approach taken by other courts which have held that an ALJ may properly elect to follow the consultative opinion of a non-examining physician who reviews a claimant's medical records over treating physician assistant opinions, provided the ALJ adequately explains the grounds for this determination. See e.g., Weaver v. Astrue, 353 F. App'x 151, 152 (10th Cir.2009); Hearn v. Colvin, No. 3:13-CV-1229, 2014 WL 4793954, at *10 11 (M.D. Pa. Sept. 24, 2014); Wade v. Colvin, No. 13–CV–135, 2014 WL 1015719 (D.Co.2014). Accordingly, there was no error here in the treatment by the ALJ of this evidence.

Finally, Long argues that the ALJ erred in assessing her subjective complaints of pain and disability, but we find that this argument is also unavailing. In assessing a claimant's allegations of pain, we begin by recognizing that "[t]estimony of subjective pain and inability to perform even light work is entitled to great weight." Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir.1979)  Given the "great weight" which this evidence should receive, an ALJ may only "reject a claim of disabling pain where he 'consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the record.' Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir.1990)."  Harkins v. Comm'r of Soc. Sec., 399 F.

App'x 731, 735 (3d Cir. 2010).  Where a disability determination turns on an

assessment of the level of a claimant's pain, the Social Security Regulations provide

a framework under which a claimant's subjective complaints are to be considered.  20

C.F.R. § 404.1529.  Such cases require the ALJ to "evaluate the intensity and

persistence of the pain or symptom, and the extent to which it affects the individual's

ability to work."  Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  Cases

involving an assessment of subjective reports of pain "obviously require[ ]" the ALJ

"to determine the extent to which a claimant is accurately stating the degree of pain

or the extent to which he or she is disabled by it."  Id.  In making this assessment, the

ALJ is guided both by statute and by regulations.  This guidance eschews wholly

subjective assessments of a claimant's disability.  Instead, at the outset, by statute the

ALJ is admonished that an "individual's statement as to pain or other symptoms shall

not alone be conclusive evidence of disability as defined in this section; there must be

medical signs and findings, established by medically acceptable clinical or laboratory

diagnostic techniques, which show the existence of a medical impairment that results

from anatomical, physiological, or psychological abnormalities which could

reasonably be expected to produce the pain or other symptoms alleged and which,

when considered with all the evidence. . . , would lead to a conclusion that the

individual is under a disability."  42 U.S.C. § 423(d)(5)(A).

Here the ALJ's decision scrupulously followed this legal guidance. While the ALJ carefully considered this plaintiff's testimony, that testimony was ultimately found to be not fully credible due to other substantial countervailing evidence. This contradictory proof which the ALJ found more persuasive in Long's case included repeated objective medical testing, treatment and examination reports; medical opinion evidence; and Long's own accounts of her activities of daily living. All of this evidence provided a more complete picture of Long's residual functional capacity, and this evidence fully supported the ALJ's finding that Long retained the ability to perform some labor in the regional and national economy.

In sum, while we have great empathy for the medical and emotional challenges confronting Ms. Long, our responsibility in this setting is to determine whether the ALJ erred in assessing the evidence under a very deferential standard of review, one which requires less than a preponderance of the evidence, but more than a scintilla of proof. When we apply this standard of proof to the instant case, we are constrained to conclude that the ALJ's decision satisfied this threshold of proof, and must therefore be affirmed.

## IV.   CONCLUSION

Based on the foregoing, the Commissioner's decision shall be AFFIRMED, and Ms. Long's requests for relief shall be DENIED.

An appropriate order shall follow.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
